UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY TOASTER,

   Plaintiff,         Case No. 18-10971

vs.              HON. MARK A. GOLDSMITH

GENERAL MOTORS LLC, et al.,

   Defendants.
_____/

**OPINION & ORDER
(1) GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE
RECORD (Dkt. 57) AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (Dkt. 58)**

  This matter is before the Court on Defendants General Motors LLC (GM) and Fidelity Workplace Services LLC's motion for judgment on the record (Dkt. 57) and Plaintiff Johnny Toaster's motion for summary judgment (Dkt. 58).[1] Defendants' motion has been fully briefed. Defendants filed a response to Toaster's motion (Dkt. 59), but Toaster did not file a reply. Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court grants Defendants' motion for judgment on the pleadings and denies Toaster's motion for summary judgment.

          **I. BACKGROUND**

  Toaster brings this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq., against GM, his former employer, and Fidelity, GM's employee benefits

---

[1] Defendants note that they were incorrectly denominated in Toaster's complaint and on the Court's docket as General Motors Company and Fidelity Investments. Defs. Mot. at 1.

servicer. The action stems from Toaster's claim that Defendants miscalculated his credited service for the years 1983–1985, 1997, and 2008–2009, resulting in an underpayment of retirement benefits under GM's pension plan. 2d Am. Compl. ¶¶ 21–22, 38–41 (Dkt. 40). Additionally, Toaster claims that he is entitled to a $25,000 vehicle voucher and a $20,000 cash payment under the terms of an early retirement agreement. Id. ¶¶ 25–26, 47–49.

Although Toaster was initially hired by GM on April 27, 1977, he was subject to a series of layoffs, rehires, and terminations between April 7, 1980 and October 2, 1985, when he was reinstated and returned to seniority status. Administrative Record (AR) at 2253–2254, 2256, 2259 (Dkt. 53). On August 29, 2007, Toaster began requesting additional credited service for the layoff periods spanning from 1980–1984. Id. at 2312. GM's Benefits and Service Center (GMBSC) responded to Toaster's inquiry on September 19, 2007, in a letter explaining that his GM credited service was 26.0 years. Id. at 2223–2227. On March 13, 2008, GMBSC provided Toaster with an updated explanation indicating that his GM credited service had been audited and adjusted to 25.0 years to account for his non-seniority time in 1983–1985, as well as new plan provisions negotiated with the union in 2007. Id. at 2232–2237.

Toaster also disputes GM's calculation of his credited service for the year 1997. Between March 1, 1994 and February 9, 1997, Toaster worked for American Axle Manufacturing (AAM) rather than for GM. AR at 2253, 2257. Defendants explain that the pension plan prevents employees from receiving more than one year of credited service in one calendar year. Defs. Mot. at 22. Therefore, because Toaster received 0.2 years of AAM credited service for 1997, he could receive only 0.8 years of credited service from GM for the same year. See AR at 2315.

Regarding his credited service for the years 2008 and 2009, Toaster filed a workers' compensation claim in May 2007 and was on a sickness and accident leave of absence from

2

October 29, 2007 through his retirement in March 2009. Id. at 2253–2254, 2258. Over two years later, on July 21, 2011, Toaster entered into a settlement agreement with GM resolving several workers' compensation claims from 1998 and 2007. Id. at 2536. In his complaint, Toaster alleges that he should have been awarded credited service for 2008 and 2009, as he was eligible for workers' compensation during that time. 2d Am. Compl. ¶ 22. Defendants, however, maintain that Toaster is not entitled to credited service for that time because he received no workers' compensation benefits, as required to be eligible for credited service. AR at 2558; Defs. Mot. at 23.

Toaster's final claim stems from the Special Attrition Program (SAP), an agreement executed on February 16, 2009, which entitled Toaster to early retirement and pension benefits. AR at 2544–2551. The SAP agreement contained two benefits options relevant to the present dispute. The first option provided for pension benefits under the "Normal or Voluntary provisions of the 2007 GM-UAW Pension Plan," as well as a $25,000 vehicle voucher and a $20,000 cash payment. Id. at 2545. This option was available only to employees who were: (i) age 65; (ii) age 60–65, with ten or more years of GM credited service; or (iii) age 55–60, with GM credited service plus age totaling 85 or more. Id. at 1844. The second option offered early retirement under the 2007 GM-UAW Pension Plan to employees who were age 55–65, with ten or more years of GM credited service. Id. at 2545.

Although it is undisputed that Toaster executed the SAP agreement and retired on March 1, 2009, see AR 2258, the parties dispute which benefits option Toaster elected. Toaster maintains that he elected the first option, Toaster Aff. ¶ 10 (Dkt. 58-1); he submits what he claims is the original election form, Pl. Election Form at PageID.3088 (Dkt. 58-1). This form contains check marks next to both the first and second options, with the second option also circled. Pl. SAP Form

3

at PageID.3088. According to Toaster, although he elected the first option on the form, human resources representative Jerome Barnes later changed the election to the second option without Toaster's permission or knowledge. Toaster Aff. ¶ 11. Toaster further explains that Barnes later informed him that until a workers' compensation claim was resolved, Toaster was ineligible for the first option but that he could return to the office to change his election back to the first option. Id. ¶14. Although Toaster attempted to change the election back to the first option, he maintains that those efforts were unsuccessful. Id. ¶¶ 14–21.

According to GM, Toaster elected the second option. Defs. Mot. at 3. The election form included in the administrative record reflects that Toaster elected the second option—the box next to the second option contains a check mark, is circled, and was initialed by Toaster. AR 2545.[2] Meanwhile, the box next to the first option is empty. Id. GM further emphasizes that Toaster was ineligible for the first option because his combined age of 55 and GM credited service of 25.0 years was less than 85. Defs. Mot. at 3–4; see also AR at 2542 (noting that Toaster was 57 years old as of July 21, 2011).

In November 2011, GM's pension plan was amended pursuant to negotiations with the union, which resulted in Toaster being paid retroactive benefits of $10,373.48. AR at 2404–2406. At the same time, GMBSC confirmed that Toaster's GM credited service was updated to reflect the credited service earned prior to retirement, which resulted in a total of 25.5 years of GM credited service and 2.9 years of AAM credited service. Id. at 2249–2250. On multiple occasions thereafter, Toaster challenged the calculation of his GM credited service for the years 1983–1985, 1997, and 2008–2009. See GMBSC Resp. to Inquiries at PageID.3094–3098 (Dkt. 58-1); AR at 2415.

---

[2] Toaster contends that the election form in the administrative record is falsified. Pl. Mot. at 3, 6.

Ultimately, on March 23, 2018, Toaster filed the present action advancing: (i) an ERISA claim seeking recovery of retirement benefits under 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B) (Count I); (ii) an ERISA claim alleging that Defendants breached their fiduciary duties, in violation of 29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3) (Count II); and (iii) a federal common law claim asserting a breach of contract (Count III). On June 20, 2018, the Court entered a stipulated order dismissing the action without prejudice, to permit Toaster to seek administrative review of his claims. 6/20/18 Order (Dkt. 10). Toaster obtained a first-level review of his claims by the Pension Committee and a second-level review by the Board of Administration; his claims were denied at both levels. AR at 2556–2559, 2640–2642. Because the parties were unable to resolve the dispute, the Court reopened the case on November 19, 2019. 11/19/19 Order (Dkt. 27).

Defendants have filed a motion for judgment on the record, arguing that Toaster's claims were waived pursuant to releases of liability contained in the SAP agreement and the 2011 settlement agreement, that the claims are time-barred under the statute of limitations, and that the claims were properly denied by the Board. Toaster has likewise filed a motion for summary judgment seeking declaratory relief regarding his years of credited service and entitlement to the retirement benefits under the SAP agreement.

## II.   MOTION STANDARDS

### A. Summary Judgment

Defendants' arguments that Toaster waived his claims and that the claims are barred under the statute of limitations do not implicate the merits of the plan administrator's determinations. Under such circumstances, courts have held that ordinary principles of summary judgment apply, rather than the standards applicable to review of a plan administrator's decision. <u>Trombly v. Fidelity Workplace Servs., LLC</u>, No. 11-13477, 2013 WL 866456, at *6 (E.D. Mich. Mar. 7, 2013)

5

(citing Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 427 (6th Cir. 2006)).  Accordingly, the Court applies the summary judgment standard in confronting those matters.

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case."  Horton v. Potter, 369 F.3d 906, 909 (6th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

**B. Review of the Plan Administrator's Decision**

The standard of review applicable in an ERISA action challenging a plan administrator's benefits determination depends on the degree of discretionary authority conferred to the administrator under the benefits plan.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Accordingly, "application of the highly deferential arbitrary and capricious standard of review is appropriate only when the

6

benefit plan gives the fiduciary or administrator discretionary authority to determine eligibility for benefits." Miller v. Metro. Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991).

Whether a plan administrator maintains discretionary authority does not "hinge on the word 'discretion' or any other 'magic word,'" but is instead determined by reference to "the breadth of the administrator's power—their authority 'to determine eligibility for benefits or to construe the terms of the plan.'" Schacht v. BASF Corp., No. 11-cv-10029, 2013 WL 1285928, at *2 (E.D. Mich. Mar. 28, 2013) (quoting Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998)). For instance, courts have held that plan language "granting the authority to construe the terms of the plan and providing that the plan administrator's benefit determinations shall be binding and conclusive, triggers judicial review under the deferential 'arbitrary and capricious' standard." Trombly, 2013 WL 866456, at *4 (citing Calvert v. Firstar Fin., Inc., 409 F.3d 286, 292 (6th Cir. 2005)); see also Adams v. Ford Motor Co., 847 F. Supp. 1365, 1377 (E.D. Mich. 1994) (holding that a plan reserved discretion to the plan administrator where it provided that all decisions, interpretations, and determinations of fact by the company would be "final and binding upon the employees affected").

Here, the pension plan sets forth a review procedure for benefits applications, including disputes regarding credited service. AR at 114. The Pension Committee first reviews the claim and renders a decision. Id. If the claimant is dissatisfied with the outcome or if the Pension Committee is unable to agree on the disposition of an application, the claim must be referred to the Board of Administration. Id. Regarding decisions rendered by the Board, the plan includes the following provision:

> The Board shall advise the Pension Committee in writing of the disposition of any case referred to the Board by the Pension Committee. The Pension Committee shall forward a copy of such disposition to the employee. Each such ruling shall be final and binding on the Union and its members, the employee or employees involved,

7

>and on the Company, subject only to the arbitrary and capricious standard of judicial review

Id. The plan, therefore, vests the Board with the discretionary authority to render binding decisions regarding entitlement to plan benefits. Further, the plan expressly restricts judicial review to the arbitrary and capricious standard. Accordingly, the arbitrary and capricious standard of review applies.

"The arbitrary or capricious standard is the least demanding form of judicial review of administrative action." Davis v. Kentucky Fin. Cos. Ret. Plan, 887 F.2d 689, 693 (6th Cir. 1989) (punctuation modified). Under this standard, an administrator's decision will be upheld "if it is the result of a deliberate, principled reasoning process, and is rational in light of the plan's provisions." Cooper v. Life Ins. Co. of N. Am., 486 F.3d 157, 165 (6th Cir. 2007) (punctuation modified). Thus, while a decision satisfies this standard if it relies on substantial evidence, it may be found to be arbitrary and capricious if it "relies on an interpretation of the plan that found no support in the text." Lanier v. Metro. Life Ins. Co., 692 F. Supp. 2d 775, 786 (E.D. Mich. 2010). In reviewing an administrator's decision, courts are "confined to the record that was before the Plan Administrator." Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615 (6th Cir. 1998). Additionally, the plaintiff "bears the burden of proving that the administrator's decision denying benefits was arbitrary and capricious." Durbin v. Columbia Energy Grp. Pension Plan, 522 F. App'x 341, 346 (6th Cir. 2013).

### III. ANALYSIS

In claiming that they are entitled to judgment on the record, Defendants assert three primary arguments. First, they argue that Toaster waived his claims pursuant to releases of liability in the SAP agreement and the 2011 settlement agreement. Defs. Mot. at 14–17. Second, Defendants argue that Toaster's claims are untimely under the statute of limitations. Id. at 17–18. Third,

Defendants maintain that the Board's claim determinations must be upheld on the merits. Id. at 18–24. In response to Defendants' motion, as well as in his own motion, Toaster supplies little to no legal analysis or citation to record evidence. Instead, he largely reiterates the allegations set forth in his complaint.

The Court first construes the scope of the releases in the SAP agreement and the 2011 settlement agreement and then determines the statute of limitations governing each of Toaster's claims. Next, the Court evaluates when each of Toaster's claims accrued—an issue that is determinative of whether the claims were waived and whether they are time-barred. Concluding that all but one of Toaster's claims were waived and are untimely, the Court considers the merits of the Board's denial of Toaster's remaining claim.

**A. Release Agreements**

Defendants contend that Toaster waived his claims under the terms of release provisions in the SAP agreement and the 2011 settlement agreement.[3] Federal law does not preclude the waiver of ERISA claims pursuant to release agreements. See Lockheed Corp. v. Spink, 517 U.S. 882, 888 (1996) (holding that ERISA does not prevent "an employer from conditioning the receipt of early retirement benefits upon the participants' waiver of employment claims"); Taylor v.

---

[3] Toaster contends that Defendants waived this issue because they failed to advance the argument during the administrative process. Pl. Mot. at 3–4. Although a plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time in court, that rule does not apply where the defense asserted in court does not reach the merits of the administrator's decision to deny benefits. Upadhyay v. Aetna Life Ins. Co., No. C13-1368, 2014 WL 186709, at *2 (N.D. Cal. Jan. 16, 2014); see also Paulus v. Isola USA Corp. Ret. Plan, No. 13-cv-212, 2014 WL 462367, at *5 (W.D. Wis. Feb. 5, 2014) (permitting the plan administrator to raise the statute of limitations as an affirmative defense even though it was not raised during the administrative process). As discussed above, Defendants' argument regarding the releases does not touch on the merits of the Board's decision. Accordingly, Defendants did not waive this argument.

Visteon Corp., 149 F. App'x 422, 426–427 (6th Cir. 2005) ("Like most legal claims, ERISA claims . . . may be settled.").

Because releases are contractual agreements, they are interpreted in accordance with the law governing contracts in the state where the release was signed. Taylor, 149 F. App'x at 424–425; see also Brieger v. Tellabs, Inc., 473 F. Supp. 2d 878, 885 (N.D. Ill. 2007) (citing Curran v. Kwon, 153 F.3d 481, 488 n.12 (7th Cir. 1998)). Because Toaster resided at the same address in Detroit, Michigan, both before and after the SAP agreement was executed, it was likely signed in Michigan. See AR at 2232, 2249. The settlement agreement indicates that it was signed in Wayne County, Michigan. Id. at 2542. Thus, Michigan law applies. Michigan courts have applied ordinary principles of contract law in assessing the scope of a release:

> The scope of a release is governed by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity.

Cole v. Ladbroke Racing Mich., Inc., 614 N.W.2d 169, 176 (Mich. Ct. App. 2000) (citations omitted).

Here, the SAP agreement, executed on February 16, 2009, contained the following provision:

> In consideration for participation in the 2009 Special Attrition Program, I hereby release and forever discharge GM, Delphi, the UAW and their officer, directors, agents, employees, stockholders and employee benefit plans from all claims, demands and causes of action, (claims) known or unknown which I may have related to my employment or the cessation of my employment or denial of any employee benefit. This release specifically includes, without limitation, a release of any claims I may now have under [t]he Employee Retirement Income Security Act of 1974 (ERISA) . . . . This release does not waive claims that arise only after the execution of this release.

10

AR at 2548. This broad release expressly waives any claims, whether known or unknown, under ERISA or relating to Toaster's employment that existed at the time the SAP agreement was executed.[4]

The settlement agreement executed on July 21, 2011 contains a similarly broad release:

> Claimant specifically releases GM, Delphi, and their employees, officer, employee benefit plans, successors and directors of any and all liabilities, causes of action, damages, claims, and demands, of whatsoever kind and nature which Claimant may have related to . . . the Employee Retirement Income Security Act of 1974, as amended, which regulates employee benefit plans; and every other federal, state, or local laws or regulations, or common law actions relating to employment or employment discrimination . . . . This covers claims Claimant knows about and those Claimant does not know about. This does not waive any claims that are not subject to waiver under applicable law or that arise after the date Claimant separates from his or her employment.

Id. at 2539–2540. This release likewise expressly waives any claims, whether known or unknown, under ERISA or relating to Toaster's employment that existed at the time the settlement agreement was executed.

There is no doubt that the present claims arise under ERISA and concern Toaster's employment. Thus, the critical issue in determining whether the releases in the SAP agreement and 2011 settlement agreement bar Toaster's claims is whether the claims existed at the time the agreements were executed on February 16, 2009 and July 21, 2011, respectively. The issue will be discussed later, in tandem with the statute of limitations, as it is pertinent to both the release and limitations defenses.

---

[4] Although Toaster disputes whether the copy of the SAP agreement's election form included in the administrative record is genuine, he does not dispute that he executed the SAP agreement and signed the page of the agreement containing the release language. See AR 2548.

11

### B. Statute of Limitations

The timeliness of Toaster's claims likewise depends on their accrual dates. The Court confines the present section to determining the statute of limitations applicable to each of Toaster's claims. The issue of accrual, and its impact on waiver and timeliness, is addressed in the following section.

First, Toaster brings a claim seeking recovery of benefits under ERISA § 502(a)(1)(B). Because "Congress did not provide a statute of limitations for" non-fiduciary duty claims under ERISA, courts "borrow the time limit from the forum state's most analogous cause of action." Winnett v. Caterpillar, Inc., 609 F.3d 404, 408 (6th Cir. 2010). That is, courts must determine the limitations period under the law of state in which the claim was brought. Massengill v. Shenandoah Life Ins. Co., 459 F. Supp. 2d 656, 660 (W.D. Tenn. 2006) (citing Meade v. Pension Appeals & Review Comm., 966 F.2d 190, 194–195 (6th Cir. 1992)). For ERISA cases brought in Michigan, the Sixth Circuit applies the six-year statute of limitations applicable to breach of contract actions under Mich. Comp. Laws § 600.5807. Mich. United Food & Comm. Workers Union & Drug Employees v. Muir Co., 992 F.2d 594, 597 (6th Cir. 1993). Because Toaster initiated the present action on March 23, 2018, claims that accrued before March 23, 2012 are barred under the six-year limitations period.

Second, Toaster brings an ERISA claim alleging breach of fiduciary duty. The ERISA statute sets forth the limitations period for claims arising from a "fiduciary's breach of any responsibility, duty, or obligation[.]" 29 U.S.C. § 1113. The limitations period expires after the earlier of (i) six years after "the date of the last action which constituted a part of the breach or violation," or (ii) "three years after the earliest date on which the plaintiff had actual knowledge

of the breach or violation[.]" Id. Thus, even assuming that the longer limitations period applies, a fiduciary-duty claim that accrued before March 23, 2012 would be barred.

Finally, Toaster brings a federal common law claim asserting breach of contract. With respect to such claims, courts look to the law of contracts in the forum state to determine the applicable statute of limitations. See St. Julian v. Trustees of Agreement of Trust for Maritime Ass'n-I.L.A. Pension Plan, 5 F. Supp. 2d 469, 473 (S.D. Tex. 1998). As determined above, the statute of limitations for breach of contract claims in Michigan is six years. Mich. Comp. Laws § 600.5807(9). A breach of contract claim that accrued before March 23, 2012, therefore, would be barred.

### C. Accrual of Claims

#### 1. Count I—Recovery of ERISA Benefits

In Count I, Toaster seeks to recover benefits under ERISA § 502(a)(1)(B), based on Defendants' alleged miscalculation of his credited service for the years 1983–1985, 1997, and 2008–2009. Defendants maintain that any claims stemming from these alleged errors arose in those years and, therefore, existed at the time the SAP agreement and 2011 settlement agreement were executed. Defs. Mot. at 16. This argument misses the mark.

Within the Sixth Circuit, an ERISA claim for benefits arises "when a fiduciary gives a claimant clear and unequivocal repudiation of benefits." Nolan v. Detroit Edison Co., 991 F.3d 697, 708 (6th Cir. 2021). That is, "an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed when there has been a clear repudiation by the fiduciary which is clear and made known to the beneficiary." Morrison v. Marsh & McLennan Cos., 439 F.3d 295, 302 (6th Cir. 2006) (punctuation modified). Other circuits have clarified that the "clear repudiation" standard is met "when there is enough information available to the

13

pensioner to assure that he knows or reasonably should know of the [error giving rise to the claim]." Novella v. Westchester Cnty., 661 F.3d 128, 147 (2d Cir. 2011); see also Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 521 (3d Cir. 2007) (concluding that when applying the "clear repudiation" rule, a court should ask "when a beneficiary knows or should know he has a cause of action").

These cases have held that the "clear repudiation" rule does not require an explicit demand for and refusal of benefits. Id. When it comes to a pensioner's notice of a miscalculation of benefits, receipt of a diminished benefits award, standing alone, will generally not constitute notice unless the fact of an underpayment is patently obvious. Fletcher v. Comcast Comprehensive Health & Welfare Plan, No. 2:09cv1272, 2011 WL 743459, at *5 (W.D. Pa. Feb. 24, 2011); see also Novella, 661 F.3d at 147 ("[S]imply receiving a lower pension payment is not enough to put a pensioner on notice of a miscalculation."). But actual notice to a pensioner of the method of calculation of a benefits award has been deemed sufficient to constitute notice of an alleged miscalculation. Novella, 661 F.3d at 147.

Here, the unrebutted evidence in the administrative record reveals that by March 13, 2008, Toaster possessed sufficient information to put him on notice of GM's alleged miscalculation of his credited service for the years 1983–1985 and 1997. On August 29, 2007, Toaster requested additional credited service for the layoff periods from 1980–1984. AR at 2312. GMBSC responded on September 19, 2007, with a letter explaining that Toaster's GM credited service was 26.0 years, while his AAM credited service was 2.9 years. Id. at 2223–2227. Along with this letter, GMBSC provided Toaster with a spreadsheet detailing his credited service for discrete periods of time spanning from his initial hire on April 27, 1977 through January 1, 2007. Id. at

2226–2227. Accordingly, GM clearly repudiated Toaster's claim to additional credited service for the layoff periods from 1980–1984.

On March 13, 2008, GMBSC notified Toaster that, after performing an audit regarding his credited service, GMBSC determined that he had 25.0 years of credited service with GM, as of February 24, 2008. Id. at 2232. GMBSC again provided Toaster with a spreadsheet breaking down his credited service for discrete periods between April 24, 1977 and February 24, 2008. Id. at 2234–2245. Through this communication, Toaster was put on notice of GM's alleged miscalculation of credited service for the years 1983–1985 and 1997. Moreover, Toaster does not point to any additional information he obtained since GMBSC's March 2008 letter that allowed him to discover the alleged miscalculation and to assert the present claims. Thus, any ERISA claim regarding credited service for the years 1983–1985 and 1997 accrued, at the latest, by March 13, 2008. As a result, these claims are waived under the releases in the SAP agreement and 2011 settlement agreement; they are also time-barred under the statute of limitations.[5]

With respect to Toaster's credited service for the years 2008 and 2009, there is no indication in the administrative record that Toaster's claim accrued before he executed the releases or before March 23, 2012. Following the letter dated March 13, 2008, the administrative record does not reflect that GMBSC provided Toaster with an updated calculation of his credited service until November 23, 2011. See id. at 2249. On that date, GMBSC sent Toaster a letter stating that as of March 1, 2009, his total credited service with GM was 25.5 years. Id. However, it did not

---

[5] Toaster insists that he did not waive his claims because he repeatedly challenged the calculation of his credited service in 2011, 2014, 2015, and 2016. Toaster Aff. ¶ 23. However, the releases in the SAP agreement and the 2011 settlement agreement broadly waived all existing claims, whether Toaster was aware of them or not. If Toaster wished to preserve the claims of which he was aware, it was incumbent on him to incorporate a term expressly excluding them from the scope of the release. He did not.

15

include a spreadsheet detailing the amount of credited service awarded to Toaster for discrete time periods—specifically, it did not indicate how much credited service was awarded for the years 2008 and 2009. Id. The next letter containing a spreadsheet indicating the credited service awarded for those years was dated March 29, 2017. Id. at 2253–2260. Therefore, it would appear from the administrative record that an ERISA claim regarding credited service for 2008 and 2009 accrued on March 29, 2017. Consequently, that claim was not released under the 2011 settlement agreement, nor is it barred under the statute of limitations.

Defendants, therefore, are entitled to dismissal of Toaster's claims stemming from the calculation of credited service in 1983–1985 and 1997, as they were waived under the releases and are untimely. However, dismissal of the claim stemming from the calculation of Toaster's credited service for 2008 and 2009 is not appropriate on these grounds.

### 2. Count II—Breach of Fiduciary Duty

In Count II, Toaster maintains that Defendants breached their fiduciary duties under ERISA § 502(a)(3) by failing to pay benefits to which he is entitled under the first option of the SAP agreement's election form—namely, a $25,000 vehicle voucher and a $20,000 cash payment.

An ERISA claim asserting a breach of fiduciary duty accrues on the date of the last action that constituted a part of the breach or violation or on the date on which a plaintiff had actual knowledge of the alleged breach. Schreiber v. Philips Display Components Co., 503 F. App'x 385, 390 (6th Cir. 2012). "Actual knowledge means knowledge of the underlying conduct giving rise to the alleged violation, rather than knowledge that the underlying conduct violates ERISA." Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich., 751 F.3d 740, 747 (6th Cir. 2014) (punctuation modified).

The administrative record and evidence proffered by Toaster demonstrate that GM declined to award Toaster the disputed benefits in 2009. Toaster admits that shortly after he executed the SAP agreement, Barnes informed him that he was ineligible for benefits under the first option on the election form. Toaster Aff. ¶ 14. Although Toaster claims that Barnes told him he could change his election to the first option when his workers' compensation claims were settled, Toaster's subsequent attempts to change his election were unsuccessful. Id. ¶¶ 14–21. Additionally, in March 2009, GM sent Toaster a form confirming the amounts of his monthly pension payments and surviving spouse monthly benefits, which he signed on March 24, 2009. AR at 2283–2286. This form made no reference to a $25,000 vehicle voucher or a $20,000 cash payment. Had GM intended to pay Toaster these benefits, it presumably would have confirmed payment terms in writing. The absence of such a record further indicates that GM declined to award Toaster those benefits upon his retirement. Because Barnes expressly informed Toaster that he was ineligible to elect the option that would entitle him to the $25,000 vehicle voucher and $20,000 cash payment, Toaster had actual knowledge that GM declined to award him these benefits in 2009.

Thus, an ERISA fiduciary-duty claim stemming from Toaster's alleged entitlement to these benefits accrued in 2009. As a result, the claim was waived under the release in the 2011 settlement agreement and is untimely under either the three-year or six-year statute of limitations. Defendants are entitled to dismissal of this claim.

### 3. Count III—Federal Common Law Claim

Count III of Toaster's complaint asserts a federal common law claim based on Defendants' alleged breach of the SAP agreement by failing to pay Toaster the $25,000 vehicle voucher and a $20,000 cash payment to which he is allegedly entitled under the first option of the election form.

As indicated above, contract law in the forum state governs the accrual date and statute of limitations for federal common law claims asserting breach of contract. See St. Julian, 5 F. Supp. 2d at 473. In Michigan, breach of contract claims accrue "when a contracting party fails to do what he is obligated to do under the contract." Sunseri v. Proctor, 487 F. Supp. 2d 905, 909 (E.D. Mich. 2007) (citing Jacobs v. Detroit Auto. Inter-Ins. Exchange, 309 N.W.2d 627 (Mich. Ct. App. 1981)). That is, "a breach of contract claim accrues on the date of the breach, not on the date the breach is discovered." Id. (punctuation modified).

As explained above, GM's alleged breach of the SAP agreement occurred shortly after Toaster executed the agreement on February 16, 2009, when Barnes informed Toaster that he was ineligible for benefits under the first option on the election form and when GM failed to pay the disputed benefits to Toaster upon his retirement in March 2009. Thus, any breach of contract claim against Defendants would have accrued in 2009. Consequently, this claim was waived under the 2011 settlement agreement and is barred under the statute of limitations. Defendants are entitled to dismissal of this cause of action.

### D. Merits of the Plan Administrator's Decision

Because Toaster's claim to additional credited service for 2008 and 2009 was neither waived under the releases nor barred under the statute of limitations, the Court confronts the merits of the plan administrator's decision relative to this remaining claim.

On first-level review, the Pension Committee determined that Toaster properly received a full year of credited service for 2007 and 0.9 years of credited service for 2008. AR at 2558. The Pension Committee determined that Toaster was not entitled to further credited service because he was on a sickness and accident leave of absence from October 29, 2007 through February 27, 2009, at which point he was laid off. Id. Toaster argued that he was eligible to receive additional credited

service because he was on workers' compensation during this period. Id. However, the Pension Committee determined that Toaster's workers' compensation claim was denied and was ultimately settled in 2011, with Toaster agreeing that he waived all workers' compensation rights and that he received no amount in actual workers' compensation benefits. Id. On second-level review, the Board found that the Pension Committee adequately addressed Toaster's concerns regarding this issue. Id. at 2641–2642.

Applying the arbitrary and capricious standard of review, the Court finds that the Pension Committee's reasoning, which was adopted by the Board, was a rational application of the pension plan's provisions. Article III, § 1(b)(2) of the plan provides that "[a]n employee who is absent from work because of occupational injury or disease incurred in the course of such employee's employment with [GM], and on account of such absence receives Workers Compensation while on [GM] approved leave of absence shall be credited with 40 hours for each calendar week of such absence after September 1, 1961." Id. at 74, 1882. Thus, to receive credited service for an occupational injury, an employee must receive workers' compensation benefits.

Toaster filed a workers' compensation claim in May 2007 and was on a leave of absence from October 29, 2007 through his retirement in March 2009. Id. at 2253–2254, 2258. In connection with the settlement of his workers' compensation claim, Toaster executed an affidavit wherein he attested that he waived "all workers' compensation rights [he] may have" against GM and that he received no workers' compensation benefits from GM or its insurance carrier as a result of his alleged injuries. Id. at 2541–2542. Toaster offers no argument rebutting this reasoning or evidence.

Because the record establishes that Toaster received no workers' compensation benefits in connection with his period of disability from 2007–2009, he is not entitled to additional credited

19

service for this time. Accordingly, because the Pension Committee and Board rationally applied the terms of the plan, Toaster's claim to additional credited service for 2008 and 2009 is dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for judgment on the record (Dkt. 57) and denies Toaster's motion for summary judgment (Dkt. 58).

SO ORDERED.

Dated: August 27, 2021                   s/Mark A. Goldsmith
    Detroit, Michigan                  MARK A. GOLDSMITH
                                          United States District Judge